## MATTER OF SALTUS.

### September, 1867.

Executors, selling property at an inadequate price, may be charged, on the accounting, with what the property was actually worth at the time of the sale, and might, with reasonable diligence, have been obtained for it.

Where executors make payments on account of the principal of a fund, to a beneficiary who has only become entitled to interest, their charge of such payments must not be wholly rejected on the accounting, but should be allowed to the extent of the interest which should have been paid.

If a testator was liable upon drafts drawn for the benefit of a third person, the payment of such drafts should not be allowed to the executors, unless the estate be credited with the same amount as a claim against the principal debtor; or, unless it be shown that the principal debtor is insolvent. The estate is not, in the first instance, chargeable in the executors' account with such a debt.

Where the testator was principal owner of a business corporation,— *Held,* that payments made by the executors, in satisfaction of the notes of such corporation, for the benefit of a person who purchased the stock and property of the corporation from the estate, were not, under the circumstances, properly allowed to the executors in their account.

Where an executor, as surviving partner of the decedent, continues the business of the firm, the books of the firm and the balance sheet, showing the amount due the estate, are evidence against the executor on his accounting; and it is incumbent on the executor to show what deductions, if any, should be made with reference to the uncertain value of the assets.

Theodore Saltus, Anna Saltus and Lansing Pruyn, executors

of Francis Saltus, deceased, cited the parties in interest to appear in the surrogate's court, in the city of New York, upon an accounting, and for a final settlement of their account. Theodore Saltus rendered the account, and various objections were taken to it, which appear fully in the opinion.

The surrogate decreed that a sale of certain leasehold property, made by the executors to a debtor of the testator, was made at an inadequate price, and he charged the executors with five thousand dollars additional to the price with which they had charged themselves in the account.

The will contained a clause setting apart a sum to produce an annuity of three thousand dollars, for the testator's wife, and giving the executors a sufficient sum to be invested for that purpose. Another clause gave the residuum to the executors in trust, with power of sale, &c., to pay, among other things, to testator's son, Francis Henry Saltus, the income of one-eighth part of the residuum, and on his death to pay over one-eighth of the residuum to Francis Saltus Saltus, testator's grandson. The executors made certain payments to Francis Henry Saltus, amounting altogether to seven thousand dollars. The surrogate disallowed these payments, and held, that the sums represented must be invested, and that the executor was liable therefor.

Among other items entered in the schedule of debts, or sums paid to creditors, was the following:

"1856.    May 1.
"By notes Peru Iron Co., 1st Jan. 1855, for the payment of which the estate was bound,    -    -    -    $41, 737 01."

This sum consisted partly of drafts purporting to be drawn by William F. Saltus, manager of the company at Clintonville, on the Peru Iron Company in New York, and accepted by Theodore Saltus, the secretary, and partly of drafts purporting to be drawn at New York by Saltus & Co. on the iron company, and likewise accepted. The executors relied on the fact that the testator was the chief partner and sole capitalist in the firm of Saltus & Co., and the executors had continued the firm for the interest of the estate during the period in which these drafts were drawn, and that Saltus & Co. had received the

money on them; and that, as the works of the company had been sold, the testator's indebtedness on the drafts was properly charged against the estate, at least as to the draft drawn by his firm of Saltus & Co. The surrogate held, on this point, that the item must be stricken out of the account, being a debt of the Peru Iron Company, and not a proper charge against the parties selling their interest in that company.

In the inventory filed by the executor, and in his account, the personal property was stated as " An interest in the firm of Saltus & Co., estimated by the appraisers at  -  $138,000 00."

One of the parties in interest produced the balance-sheet of the firm of Saltus & Co., in which Theodore Saltus, the executor, was a member, and the business of which he carried on after the testator's death, by which it appeared that the amount due to the estate of the testator on January 31, 1855, the time at which the balance-sheet was made out, which was shortly before the personal accounting, was one hundred and forty-nine thousand six hundred and seventy-six dollars and sixty-seven cents. Upon this point the surrogate directed that the executors reform their account, so as to account for that balance appearing by the books and balance-sheet.

*The supreme court,* on appeal from the surrogate, affirmed the order in all respects, but without rendering any opinion; and the executors, Theodore and Anna Saltus, appealed to this court.

*Charles Tracy,* for appellants;—Cited 2 *R. S.* 82, § 6, subd. 1; 87, § 25.

*G. M. Speir,* for respondents;—Cited, Schenck v. Dart, 22 *N. Y.* 423; Downs v. Gazebrook, 3 *Mer.* 200; 4 *Kent Com.* 74, case cited; Parkinson v. Parkinson, 2 *Bradf.* 77; Stilwell v. Doughty, *Id.* 311.

BY THE COURT.—GROVER, J.—Upon the accounting before the surrogate, several items of credit, claimed by the appellants, against the estate, were disallowed. An additional credit of five thousand dollars was given to the estate, on account of the sale, by the appellants, of the store and premises, 83 Mur-

ray-street, to Caroline Saltus, a daughter of the testator, for the price of twenty thousand dollars. No question was made before the surrogate, nor is any made here, but that the appellants had full power to sell and convey this property. The interest of the testator therein was that of lessee, for a term of years, from Trinity Church. Upon the hearing before the surrogate, evidence was given as to the time of the sale, and as to the value of the property. It was claimed, upon the part of the appellants, that the sale was made in November, 1855; and the respondents claimed that it was not made until March, 1856. This was a material question, as the evidence showed that the property was rapidly rising in value; and all the evidence tending to show that the appellants acted in bad faith related to a time subsequent to November, 1855. The evidence of the witness Gilbert M. Spier, of what occurred at an interview between him and Theodore Saltus, one of the appellants, in March, 1856, if true, shows that the sale had not, at that time, been made. Although there is some evidence tending to show that the sale was made the November previous, there is nothing of that certain, definite character, to call for a reversal of the conclusion of the surrogate upon this point. Adopting the finding as to the time of the sale, the evidence fully warrants the further finding, that the property was worth, at least, twenty-five thousand dollars at the time of the sale, and, with reasonable diligence, might have been sold for that sum. The addition made to the credit of the estate was, therefore, correct. 2 *R. S.* 525, § 8.

As to the amount charged by the appellants as having been paid to Francis H. Saltus, I think the surrogate fell into an error. The will provides that the executors shall pay him the one-eighth part of the income of the residuary estate for life, and, at his decease, pay the said eighth to Francis S. Saltus. The surrogate wholly disallowed the charge, upon the ground that the executors had no right, by the will, to pay any of the principal to Francis H. The ground is correct, but does not apply to the whole sum so paid. Several years had elapsed from the death of the testator, at the time of accounting, and the residuary estate had earned more or less income, one-eighth of which the executors were required to pay Francis H. The de-

cree should have allowed the appellants this eighth of the income on what had been paid to Francis H., and disallowed the other money so paid to him.

The most material item of credit claimed by the appellants, and disallowed by the surrogate, was the forty-one thousand five hundred and fifty-seven dollars and one cent charged on account of paying notes of the Peru Iron Company. I think this charge properly disallowed. The Peru Iron Company was a corporation, in which the testator owned the principal amount of stock. This stock, as I understand the case, by transfers, had become vested in Theodore Saltus. This circumstance is not material to the view I take of the question, except so far as the form of the account is concerned. This debt, charged as having been paid, consists mainly of drafts drawn by Saltus & Co. upon the iron company, and accepted by the latter, on account of advances made by the former for the latter. The debt was that of the iron company, and should have been paid by the latter. These advances were made by Saltus & Co., and the testator owned the capital of the firm, and six-eighths of the profits. If the appellants were charged upon these drafts as drawers, and compelled to pay, it was their duty to have collected the amount from the iron company at once. From the facts appearing in the case, there is no doubt of the ability of the latter to pay. Should the surrogate have allowed this charge, it would have been his duty to see that the estate was credited the same amount for a debt against the iron company, for money paid, and its use. The only question presented, as appears before the surrogate, was, whether the estate was not bound to pay this debt for the benefit of Theodore Saltus,—or Saltus & Co.,—who purchased the real estate of the company, and its stock from the executors. This, the estate was clearly not bound to do. That is the argument presented here for the allowance of this item to the appellants. Of course, had the iron company been insolvent and been charged upon this paper, the executors would be entitled to credit for its payment; but that is not the question made by the parties. That question, as above remarked, is, whether the estate of the testator should pay this paper. That was the

question decided by the surrogate; and his decision was correct.

It is claimed by the appellants, that the surrogate erred in fixing the amount of personal estate, in the firm of Saltus & Co., for which the executors were accountable. That amount was a trifle over one hundred and forty-nine thousand dollars. This was shown by the books of the firm; and these books were *prima facie* evidence against Theodore Saltus, the principal acting executor, and a member of the firm. This sum was properly assumed by the surrogate; and it was incumbent upon the appellants to show what corrections, if any, should be made.

The above are the only questions argued in this court. A further examination shows that Henry Saltus was indebted to the estate in a sum exceeding the amount he was entitled to as interest upon his residuary share. The surrogate was, therefore, right in not allowing a credit to the appellants for the sums paid him. His claim to interest upon his share should have been applied upon his indebtedness to the estate.

The judgment should be affirmed.

All the judges concurred.

Judgment affirmed, with costs.